Western District Court
Western District of Kentucky
Louisville Division

FILED

JAMES J. VILT, JR. - CLERK

MAY 15 2023

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

Khalfani Kamau
Petitioner "Pro se"

— vs —

Jeff Tindal
Oldham County Detention Center
Respondent

Petition for Writ of Habeas Corpus
and
Memorandum of Law in Support Thereof

Case No.: 3:23CV 252 JHM

# DIAGRAM A -1

## TIMELINE OF CONSTITUTIONAL VIOLATIONS

### MARCH 2022

Det. McCamey obtained tracking information of Petitioner's cellular device 812-650-6925 from service provider T-Mobile in violation of Ind. Code 35-33-12(a)(1) and (6) and his reasonable expectation of privacy for (10) days, a search under the Fourth Amendment

Det. McCamey falsely arrested, kidnapped and false imprisoned the Petitioner in the absence of probable cause on conclusory allegation of controlled buys, where the State or Court presented no evidence on submitted criminal charges, of the same, a violation of the Fourth Amendment

Det. McCamey did knowingly and intentionally commit the criminal act of perjury when he submitted probable cause affidavit with false material statements of the conclusory allegations of controlled buys, to state-judge Bennett, for search warrant for the storage unit, a Fourth Amendment violation

MAR 25
11:00 AM EST

MAR 25
2:30 PM EST

MAR 17

MAR 25
2:00 PM EST

MAR 25
3:00 PM EST

Indiana State Police and Bloomington Police prolonged detention of traffic stop for speeding, search and seizure lasted for nearly (3) three hours on I-69, however, nothing of evidentiary value was seized yet the Petitioner was not free to leave and continue his journey once the stop ended, a Fourth Amendment violation

The Petitioner was kidnapped where he was mirandized and removed from the scene and transported to the Bloomington Police Department, without a warrant or probable cause, where he was locked into an interview room for nearly (3) three hours, a violation of the Fourth Amendment.

DIAGRAM A — 2

TIMELINE OF CONSTITUTIONAL VIOLATIONS

MARCH 2022

Det. McCamey did knowingly and intentionally commit the criminal act of perjury when he orally made false material statements of the conclusory allegation of controlled buys, to state-judge Valerie Haughton for the continued search of the Petitioner's vehicle, a Fourth Amendment violation

Bloomington Evidence Custodian released custody of the case (State v. Kamau 53C03-2203-F2-00022 ) evidence to Federal authorities and said evidence was received by the Department of Justice and the United States Attorney's office the same day this matter was filed in State Court, evidence of state-federal collusion a violation of the Fifth Amendment

MAR 31
11:00AM EST

MAR 25
4:36PM EST

MAR 30-31
11:00 AM EST

The Petitioner was formally charged by The State of Indiana with 3 counts of F2 Dealing under Indiana Law. See State v. Kamau 53C03-2203-F2-00022 in the absence of probable cause a violation of the Fourth Amendment

DIAGRAM A -3

TIMELINE OF CONSTITUTIONAL VIOLATIONS

State v. Kamau 53C03-2203-F2-000221 was dismissed by the State of Indiana, Lack of probable cause, Fourth Amendment violation

The Petitioner was falsely arrested a second-time on a facially valid federal arrest warrant, yet constitutionally invalid, in the absence of probable cause in violation of the Fourth Amendment

DEC 2022

JAN 2023

NOV 2202

JAN 2023

The (GJ) returned a facially valid Bill of Indictment on 3 count of possession with intent to distribute a controlled substance, in the absence of probable cause, the Gov't presented known false material statements and failed to inform the Grand Jury (GJ) of perjury in violation of the Fourth and Fifth Amendments. See United States v. Kamau 1:22-CR-0188 JRS-TAB as jeopardy attaches.

A violation of the Sixth Amendment

The Petitioner's former counsel of record did knowingly and intentionally conspire and confederated with the State of Indiana and the Gov't where he turned a blind-eye to a violation of his reasonable expectation of privacy, a prolonged search and seizure during a traffic stop, (2) false arrest, kidnapping and false imprisonment, (2) malicious prosecutions and double jeopardy as the Petitioner's current custody and detention at the Oldham County Detention Center is unlawful all in the absence of probable cause.

# Table of Content

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . (1)

Jurisdiction of the Court . . . . . . . . . . . . . . . . . . . . . . (5)

Power to Grant Writ . . . . . . . . . . . . . . . . . . . . . . . . (6)

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . (7)

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . (11)

The Fourth Amendment     Art. I sec.11 Ind Const. . . . . . (16)

   I. Warrantless Geolocational Tracking of Cellular
      Device . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (17)

   II. Unreasonably Prolonged Search and Seizure. . . . . (24)

   III. False Arrest and False Imprisonment . . . . . . . . . (29)

   IV. Material False Statements in Probable Cause
      Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (37)

   V. Malicious Prosecution . . . . . . . . . . . . . . . . . . . . (43)

The Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . (52)

   VI. Constitutionally Invalid Bill of
      Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (53)

   VII. Double Jeopardy . . . . . . . . . . . . . . . . . . . . . . . (64)

The Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . (76)

   VIII. Intentional Ineffective Assistance of
      Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (77)

Summary Conclusion . . . . . . . . . . . . . . . . . . . . . . . . (85)

Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (91)

Exhibit(s)
     A - H

Diagram(s) 1, 2, 3

# Table of Authorities

United States Constitution

    Fourth Amendment    Art. I sec. 11 Ind. Const
    Fifth Amendment
    Sixth Amendment

United States Supreme Court

Carpenter v. United States 138 Sct 2206 2213 201 L Ed (201 327 (2018)

United States v. Jones 565 US 400 415 132 Sct 945 181 L Ed 2d 911 (2012)

Terry v. Ohio

Illinois v. Caballes 543 US 405 407 125 Sct 834 160 L Ed 2d 842 (2005)

Florida v. Royer 460 US 491 500 103 Sct 1319 75 L Ed 2d 229 (1983)

Rodriguez v. United States 575 US 348 354 135 Sct 1609 191 L Ed 2d 492 (2015)

Manuel v. City of Joilet 137 Sct 911 197 L Ed 2d 312 (2017)

County of Riverside v. McLaughlin 500 US 44 53 (1991)

Costello v. United States 350 US 359 362 76 Sct 406 100 L Ed 397 402 (1956)

United States v. Calandra 414 US 338 342-46 94 Sct 613 617-19 38 L Ed 2d 561 568-570 (1974)

Mapp v. Illinois 360 US 42 269

Giles v. Maryland
Mesarosh v. United States 352 US 1 77 Sct L Ed 2d (1956)

Communist Party v. Subversive Activities Board 351 US 115 124 Sct L Ed 2d 100 L Ed 1003

Abbate v. United States 359 US 187 195-96 79 Sct 666 671 (1959)

Maryland v. Pringle 540 US 366 371 (2003)

Devenpeck v. Alford 543 US at 153 (2004)

Torres v. Madrid 592 US — 141 Sct 989 995 209 L Ed 2d 190 (2021)

District of Columbia v. Wesby 583 US — 538 Sct 577 585-586 199 L Ed 2d 453 (2018)

Franks v. Delaware 438 US 154 (1978)

Bartkus v. Illinois 359 US 121 122-24 79 Sct 676 677-78 (1959)

Puerto Rico v. Sanchez-Valle 579 US 59 68 136 sct 1863 195 L Ed 2d 179 (2016)

Heath v. Alabama 474 US 82 88-90 106 Sct 433 88 L Ed 2d 387 (1985)

Lanza 260 US at 382 43 Sct 141

Montana v. United States 440 US 147 154 99 Sct 970 974 59 L Ed 2d 210 (1979)

Brookhuyan v. United States 284 US 299 304 52 Sct 180 76 L Ed 306 (1932)

Ashe v. Swenson 397 US 436 443 90 Sct 1189 25 L Ed 2d 469 (1970)

Thompson v. Clark 142 Sct 1332 (2022)

Strickland v. Washington 466 US 668 687 (1984)

United States v. Cronic 466 US 648 666 (1984)

Sixth Circuit Court

Barnes v. Wright 448 F3d 709, 715-16 (6th Cir 2006)

King v. Harwood 852 F3d 568 587-88 (6th Cir. 2017)

United States v. Hill 175 F3d 255, 264

United States v. Everett 601 F3d 484 488 (6th Cir. 2010)

United States v. Cochrane 702 F3d 334 340

United States v. Stepp 630 F3d 651 661

Hernandez v. Boles   949 F3d 251, 256 (6th Cir. 2020)

United States v. Torres - Ramos  536 F3d 542 554
(6th Cir. 2008)

Messer v. Goodson  765 F3d 507 (6th Cir. 2020)

House v. Hodus  953 F3d 402 409 (6th Cir. 2020)

United States v. Djoumessi  538 F3d 547 552 (6th Cr 2008)

United States v. Clark 254 Fed Appx. 528 533 (6th Cir 2007)

Scherer v. Wiles  case no. 15-3809, case no 15-3832
(6th Cir. 2016)

United States v. Gibbons  994 F2d 301 (6th Cir. 1993)

Sykes v. Anderson  625 F3d 294 308 (6th Cir. 2010)

Johnson v. Mosley  790 F3d 649 (6th Cir. 2015)

Thomas v. Foltz  818 F2d 476 480 (6th Cir. 1987)

Rickman v. Bell  131 F3d 1150 (6th Cir. 1997)

Leonard v. Warden, Ohio State Penitentiary  845 F3d
832 843-44 (6th Cir. 2017)

Seventh Circuit Court

United States v. Devitt  499 F2d 135 139 (7th Cir. 1974)
cert denied 421 US 975  55 Sct 1974 44 LEd 2d 466
(1775)

United States v. Watson  623 F2d 1198 (7th Cir. 1980)

United States v. Sidwell  440 F3d 865 869 (7th Cir 2006)

United States v. Bacon  991 F3d 835 839 (7th Cir 2021)

United States v. McMurtrey  704 F3d 502 503
(7th Cir 2013)

Other Circuit Courts

United States v. Basurto  497 F2d 781 785 786
(9th Cir. 1974)

United States v. Patterson  809 F2d 244 247 (5th
Cir. 1987)

United States v. Abonmonssillon  726 F2d 906 910
(2d Cir 1984)

( 3 )

Indiana State Law

Mills v. State (1978) Ind App 379 NE 2d 1023

Heyden v. State 936 N.E 2d 300 (Ind Ct App 2010)

Mohame v. State 720 NE 2d 384 390 (Ind Ct App 1999)

Schaffer v. State 21A-CR-1579 (Ind. App. Mar. 30, 2022)

Indiana Code

Ind Code § 35-44.1-2-1
Ind Code § 35-33-12(a)(1)
Ind Code § 35-33-12-(b)
Ind Code § 35-48-4-1

Other States Case Law

Brown v. Dayton 730 NE 2d 958 982 (Ohio 2000)

United States Code

18 USC § 1623
28 USC § 1746
28 USC § 2241 et. seq
28 USC § 1331
21 USC § 841

* Supporting Exhibit(s):

1. Exhibit "A": Det. McCamey perjured probable cause affidavit.
2. Exhibit "B": Gov't chain of custody for evidence and lab analysis.
3. Exhibit "C": Indictment
4. Exhibit "D": Det. McCamey's Police Narrative of Traffic stop, search & seizure of Petitioner
5. Exhibit "E": Affidavit for Search of Storage Unit
6. Exhibit "F": Issued Search Warrant for Storage Unit
7. Exhibit "G": Affidavit for Continue search of vehicle
8. Exhibit "H": Issued Search warrant for vehicle

* Warrantless phone tracking info is still retained by conflict attorney,            (4)
Terrance Kinnard

## Jurisdiction of the Court

Jurisdiction is proper before this Court pursuant to 28 USC § 2241 (a) and 28 USC § 1331 where the Petitioner is currently detained at the Oldham County Detention Center, LaGrange, Kentucky.

(5)

Power to Grant Writ

This Court has power to grant this writ of habeas corpus pursuant to 28 USC § 2241(a).

## Statement of the Case

The 'Bill of Rights of the United States Constitution is afforded to every citizen born within the borders of our great country. The Fourth Amendment protects us from unwarranted intrusions in our reasonable expectations of privacy from law enforcement. The Due Process Clause of the Fifth Amendment insures us fairness and justice in our social, economic and legal processes; The Double Jeopardy Clause protects us from being twice put in jeopardy of Life, Limb and Liberty; and The Sixth Amendment insures that these rights will be protected by effective assistance of counsel.

The matter presented before the Court will show a malicious intent by the very Government and other judicial and law enforcement officials, sworn to uphold and protect these rights, but yet, arbitrarily and capriciously violate the same, in total disrespect for one of our most cherished institutions, the administration of justice, that of which they purport to so dutifully uphold.

The 'Petitioner's reasonable expectation of privacy was violated when his cellular device was tracked for nearly (10) teen days without consent, warrant or probable cause, which constitutes a search under the Fourth Amendment.

Next, the Petitioner's vehicle was stopped for an alleged traffic violation and a search was conducted for nearly (3) three hours. However,

(7)

once the search and stop ended, the Petitioner was not free to leave. Consequently, the traffic stop morphed into an unreasonable search and seizure in violation of the Fourth Amendment.

Thereafter, the Petitioner was falsely arrested, kidnapped, and falsely imprisoned in the absence of probable cause. Here, the Petitioner was removed from the scene and transported to another location all in violation of the Fourth Amendment.

Fourth, the Petitioner was maliciously prosecuted in the absence of probable cause, where said charges were dismissed, for lack of probable cause, a violation of the Fourth Amendment.

Next, the Petitioner was falsely arrested a second-time on a facially valid arrest warrant, thru malicious state and federal collusion efforts, in the absence of probable cause both violations of the Fourth and Fifth Amendments.

Sixth, the Petitioner is being maliciously prosecuted a second-time by the Government in the absence of probable cause, on a facially valid bill of indictment. However, the foundation of the same is invalid, because the Government presented known false material statements to the Grand Jury and failed in its duty to inform, a violation of both the Fourth and Fifth Amendments.

Seventh, the arresting officers did knowingly and intentionally commit the criminal act of perjury

( 8 )

under both Indiana Law pursuant to Ind. Code
# 35-44.1-2-1 and federal law pursuant to 18
USC #1623. Here, he submitted false material
statements to Indiana state court judges in the
absence of probable cause, in which to mislead
state court judges in order to obtain search
warrants in this matter. Moreover the Government
knowingly resubmitted these same false material
statements ─ in the absence of probable cause ─
to a federal grand jury, in violation of both the
Fourth and Fifth Amendments.

    The maliciousness did not stop here, the State
of Indiana and the Government did intentionally
engage in a sham prosecution of the Petitioner in
State court in which to maliciously prosecuted
the Petitioner a second time in federal court. Here,
the collusion exception to the dual sovereignty
rule prohibits a state prosecution from being used
as a cover for a federal prosecution". Evidence
shows that while this matter was in state court, the
Government engaged as a third-party and had
a sufficient laboring oar during the whole of
the state court proceedings, that of which the
Government maintained certain controls throughout
and as a result, surrendered its own sovereignty
by rule. Consequently, the current prosecution is
unlawful as jeopardy attaches, therefore
triggering the principles of estoppel embodied
in the Double Jeopardy Clause.

Consequently, the final act of maliciousness here, is the Petitioner's counsel of record's intentional ineffective assistance of counsel. That is, counsel's performance intentionally fell below an objective standard of reasonableness, and his intentional deficiences did subject the Petitioner to an invasion of privacy by law enforcement, an unreasonable search and seizure during a traffic stop, a false arrest, kidnapping, false imprisonment, a federal false arrest and two malicious prosecutions all in the absence of probable cause.

Thus, as a consequence of the foregoing facts and legal circumstances, the Petitioner's current custody and detention at the Oldham County Detention Center is illegal and violates the Fourth, Fifth and Sixth Amendments of the United States Constitution, wherefore, the Petitioner now seeks relief in this Court.

## Statement of Facts

### Warrantless Phone Tracking

On or about March 17, 2022, Det. McCamey, City of Bloomington, Indiana, Police Detective, submitted a request to T-Mobile service provider for the Petitioner's cell phone # 812-650-6725 for an alleged drug investigation. The service provider complied with his request for the geolocational tracking of this device. Indiana state law mandates a court-ordered search warrant based on probable cause for tracking of cellular devices. However, the Petitioner's cell phone was tracked for nearly 10 days without a warrant.

### Traffic Stop

Based on the warrantless tracking of the Petitioner's cellular device, on March 25, 2022, at approximately 10:30 pm est, the Petitioner was traveling in his vehicle on I-69 near Sample Rd, Bloomington, IN when he was stopped by Indiana State Police and Bloomington Police for an alleged traffic violation. The Trooper stated that he stopped the Petitioner for speeding; traveling 77 MPH in a 70 MPH zone. The Petitioner furnished

the Trooper with his driver's License and proof of registration. Then the Petitioner was asked to step out of his vehicle. The Trooper then went back to his cruiser and started to perform a commuter check and within moments, the Bloomington police K-9 officer immediately perform a "free air sniff" around the perimeter of the vehicle.

<u>K-9 Alert and 3 hour Search</u>

The K-9 officer signaled that his dog gave a positive alert to the presence of contraband which gave officers probable cause to search the vehicle. Thereafter, the Petitioner's vehicle was searched for nearly (3) three hours where nothing of evidentiary value was found, yet at no point was the Petitioner at Liberty to leave and continue his travel. The Petitioner asked "at what point am I free to leave? The K-9 officer replied, " When he (Trooper) says so!"

<u>False Arrest</u>

At approximately 1:30 pm est. while still detained and not "free to leave", Bloomington police Det. McCamey arrived at the traffic

(12)

chase and stated to the Petitioner, "Have anyone told you what this is about?" The Petitioner replied "No!" Det. McCamey then stated that "I have two controlled buys on you!" He further stated "Has anyone read you your rights?" The Petitioner replied, "No!" At this point Det. McCamey Mirandized the Petitioner and took custody of his personal property, put the Petitioner in handcuffs, and placed the Petitioner in the back of a Bloomington police cruiser.

<u>Kidnapping and False Imprisonment</u>

At approximately 2:30 pm est, the Petitioner, under warrantless arrest, was kidnapped from the scene and taken to the Bloomington Police Department and further detained in a locked interview room for nearly (3) three more hours.

<u>Search Warrant for Storage Unit</u>

At approximately 3:30 pm est, Det. McCamey obtain a search warrant for a storage unit leased to Victor Maxwell. Det. McCamey used prejured testimony before state judge Fawcett in which he stated that based on probable cause he arrested the Petitioner for two controlled buys and after the second controlled buy his surveillance team

(13)

physically followed the Petitioner to this storage unit. However, he omitted the important fact that he warrantlessly tracked the Petitioner's cellular device for 10 days in violation of Indiana Law.

<u>Continued Search of the Petitioner's Vehicle</u>

At approximately 5:45 pm est, Det. McCamey thru telephonic communication, perjured himself a second time, when he orally deposed himself under oath to state judge Valerie that he arrested the Petitioner based on probable cause for (2) two controlled buys in which to continued searching his vehicle. However, No evidence of a crime was Found.

<u>Controlled Substance Found in Storage Unit</u>

At approximately 6:00 pm est, while still unlawfully detained in a locked interview room and under false arrest for (2) two controlled buys, the Petitioner was questioned about the controlled substances found in the storage unit. The Petitioner remained silent. The Petitioner was then taken to the Monroe County Jail and booked on (3) counts of dealing in Narcotics for which was found in the storage unit. However, the Lessee, Victor Maxwell was not charged or questioned about these findings by Det. McCamey.

(14)

Moreover, the Petitioner was not charged with the (2) two controlled buys from which Det. McCamey warrantlessly arrested him. To date the Petitioner has not been charged with these alleged offenses.

Charges Dismissed in the Indiana State Court

On or about, November 11, 2022, the dealing in narcotics charges were dismissed for lack of probable cause. ①

Federal Indictment

On or about, December 7, 2022, the Petitioner was indicted on (3) count of possession with intent to distribute controlled substances. However, the Petitioner was not charged with the alleged (2) two controlled buys or (2) two counts of distribution of a controlled substances from which Det. McCamey warrantlessly arrested the Petitioner for.

Federal Arrest

On or about, January 7, 2023, the Petitioner was falsely arrested and his current custody and detention at the Oldham County Detention Center, LaGrange, KY is unconstitutional. ②

---

① State v. Kamau case No. 53C03-2203-F2-000221
② United States v. Kamau cause No. 1:22-cr-0188 JRS-TAB

(15)

## The Fourth Amendment

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

## Questions Presented

1. Did Det. McCamey violate the Petitioner's reasonable expectation of privacy when he warrantlessly tracked his cell phone for nearly 10 days?

2. Was the three (3) hour search and seizure of the Petitioner's vehicle during the traffic stop unreasonable under the limits set by Terry?

3. Did Det. McCamey falsely arrest, kidnap and false imprison the Petitioner without probable cause?

4. Did Det. McCamey commit the criminal act of perjury, when he submitted false material statements in his probable cause affidavit, which misled state court judges, to issue search warrants in the absence of probable cause?

5. Did the Government seek a second or successive prosecution without probable cause against the Petitioner?

# Fourth Amendment Claim #1:

## I. Warrantless Geolocation Tracking of Cellular Device

Did Det. McCamey violate the Petitioner's reasonable expectation of privacy when he warrantlessly tracked his cell phone for nearly 10 days?[3]

The Fourth Amendment protects against the Government's intrusions into areas and items for which people have a reasonable "expectation of privacy." _Carpenter v. United States_, 138 Sct 2206, 2213, 201 L Ed 2d 507 (2018).

"An official intrusion into private areas generally qualifies as a search and requires a warrant supported by probable cause." Id.

The _Carpenter_ court explained that when,

"the Government tracks the location of a cell phone it achieve's near perfect surveilance, as if it had attached an ankle monitor to the phone user." 138 Sct at 2218.

The key to the Court's reasoning was the inability of CSLI to distinguish between public and private life because a cell phone,

"Faithfully follows its owner beyond public thoroughfares and into private

---

[3] Terrance Kinnard, former counsel of record, retains phone tracking evidence (17) in his custody.

"residences, doctor's offices, political
headquarters, and other potentially
revealing locales,"

and collection of CSLI risks opening,

"an intimate window into a person's
life, revealing not only his
particular movements, but through
them his familial, political, professional,
religious, and sexual associations."

Id. at 2217 (quoting United States v. Jones, 565
US 400, 415, 132 Sct 945 181 L Ed 2d 911 (2012)
(Sotomayor, J. concurring)

The Court found that Carpenter had a,

"reasonable expectation of privacy
in the whole of his physical
movements"

as recorded by his CSLI Id. at 2219. The
Court stated that because cell phone owners do
Not in any "meaningful sense" choose to turn over
such a thorough record of their public and
private lives, the Court found that the
acquisition of Carpenter's CSLI was a Fourth
Amendment search regardless of whether the
Government obtained data from a third
party. Id. at 2220.

Under Indiana Law, the state Legislature
codified specific guidelines for law enforcement
officers requesting geolocation tracking of cellular

(18)

devices pursuant to Ind. Code # 35-33-12(a)(1) which provides in pertinent part,

> " A law enforcement officer or law enforcement agency may not use real-time tracking instrument that is capable of obtaining geolocational information concerning a cellular device connected to a cellular network unless,
> (1) the law enforcement officer or law enforcement agency has obtained an order issued by a court based upon a finding of probable cause to use the tracking instrument. . . . "

In the instant matter, discovery evidence shows that Det. McCamey acquired phone tracking data from service provider T-Mobile from the dates of March 17, 2022 to March 26, 2022 for Petitioner's cell phone # 812-650-6925, without first obtaining an order issued by a Indiana court of competent jurisdiction, based upon the findings of probable cause as mandated per Indiana Law.

Carpenter established that police access to historical data — certainly when (7) seven days worth or more is accessed and possibly when fewer days is accessed, is a search

(19)

under the fourth Amendment, 138 SCt at
2217 and N.3 2220. (emphasis mine)

Here, for nearly ten (10) days the Petitioner's
cell phone was unlawfully tracked without
probable cause. The tracking of this device was in
effect at the time of the traffic stop of his vehicle
on March 28. In his probable cause affidavit, Det.
McCamey coined this as "surveillance measures."
Its also important to note, that Det. McCamey failed
to document that his "surveillance measures" here,
were in fact, the warrantless real-time geolocation
tracking of the Petitioner's cellular device.
In his probable cause affidavit, Det. McCamey
states,

    "After the last controlled buy
    members of the Special Investigative
    Unit (SIU) of Bloomington Police
    Department conducted surveillance
    on Kamau... During that surveillance
    shortly after that controlled buy,
    Kamau was observed going to
    Storage Unlimited LLC..."
    (See Exhibit "A")

From this statement, Det. McCamey misled the
Indiana state court judge to believe that the
Bloomington Special Investigative Unit conducted
"physical surveillance" of the Petitioner and followed
him to this storage unit after the alleged

(20)

controlled buy. Consequently, this was the result of the warrantless tracking of his cell phone. Contradictorily, Det. McCamey mentions,

"It should also be noted that through Law Enforcement surveillance measures I was able to confirm that upon returning from a recent trip to Detroit... Mr. Kamau first stop once returning... was the above-listed storage unit." (See Exhibit "A")

Obviously, the "surveillance measures" here was the warrantless tracking of Petitioner's cellular device. Throuout, his probable cause affidavit, Det. McCamey mentions conducting surveillance on different dates and times which makes it impossible to pinpoint when the exact date and time the Petitioner made it back in town from a recent trip to Detroit thru use of physical surveillance; whereas his first stop was the aforementioned storage unit.

Finally, to accurately pinpoint the Petitioner's exact coordinate upon entering Bloomington city limits traveling I-69 at the time of the traffic stop, most certainly could not have been accomplished thru physical surveillance as Det. McCamey contradictorily imply.

In furtherance of the Indiana warrant requirement, there is an <u>exception</u> when "exigent circumstances" may exist. <u>Ind. Code § 35-33-5-12(b)</u> states in pertinent part,

"If a law enforcement officer or law enforcement agency use a real-time tracking instrument described in subsection (a) based upon the existence of exigent circumstances, the law enforcement officers or law enforcement agency shall seek to obtain an order issued by a court based upon a finding of probable cause no later than 72 hours after the initial use of the real-time tracking instrument."

Under this exception to the warrant requirement, Indiana law mandates that law enforcement officials obtains a court-ordered search warrant based upon a finding of probable cause within 72 hours after its use, if exigent circumstance exist. Therefore, if exigent circumstances existed in this matter, Det. McCamey's failure to establish probable cause will fall short of this exception as well.

Equally so, if Det. McCamey had requisite probable cause here, he would equally have had probable cause to arrest the Petitioner or in arrest

(22)

movement, therefore making a felony stop vs. a traffic stop.

Based on the blatant violation of Indiana Law and the warrantless tracking of Petitioner's cellular devices for nearly 10 days in light of <u>Carpenter</u>, Det. McCauley did violate his "reasonable expectation of privacy in the whole of his physical movements" in the absence of probable cause under the Fourth Amendment.

# Fourth Amendment Claim #2:

II.  Unreasonably Prolonged Search and Seizure

Was the search and seizure of
the Petitioner's vehicle during
the traffic stop unreasonable
under limits set by Terry?

The Fourth Amendment search and seizure
analysis unfurls chronologically and
"a seizure that is lawful at its
inception can violate the Fourth
Amendment if its manner of
execution unreasonably infringes
interests protected by the Constitution."

See Illinois v. Caballes 543 US 405, 407, 125 SCt
884, 160 L Ed 2d 842 (2005).

"A seizure that is justified solely for
the interest in issuing a warning ticket
to the driver can become unlawful if it
is prolonged beyond the time reasonably
required to complete that mission." Id.
(emphasis mine)

Traffic stops are analyzed under the Terry v. Ohio
framework because they are,
"more akin to a investigative detention
... than a custodial arrest."
See United States v. Hill, 195 F3d 258, 264

(24)

(6th Cir. 1999).

> "To qualify as a reasonable seizure
> under the Fourth Amendment, Terry
> detentions must be "limited in both
> scope and duration." " (emphasis mine) See

United States v. Everett, 601 F3d 484, 488 (6th Cir 2010
(quoting Florida v. Royer, 460 US 491, 500 103 Sct
1319, 75 L Ed 2d 229 (1983)).

In scope, the investigative methods police officers

employ,

> "should be the least intrusive means
> reasonably available to verify or
> dispel the officer's suspicions in a
> short period of time." (emphasis mine)

In duration,

> "an investigative detention must be
> temporary and last no longer than is
> necessary to effectuate the purpose
> of the stop." (emphasis mine)

See United States v. Cochrane, 702 F3d 334, 340
(6th Cir. 2012) (quoting Royer 460 US at 500, 103
Sct 1319).

A seizure can be extended if,

> "something happened during the stop
> to cause the officer to have a
> reasonable and articulable
> suspicion that criminal activity
> is a foot."

See United States v. Stepp, 680 F3d 651, 661

(25)

(6th Cir. 2012).

In *Rodriguez v. United States*, the Supreme
Court explained that,

"the permissible duration of a roadside
seizure is tightly tethered to the
mission of the traffic stop."

US 343, 354 135 SCt 1609, 91 L Ed 2d 492 (2015)

"Like a *Terry* stop, the tolerable
duration of police inquiries in the
traffic stop context is determined by
the seizure's 'MISSION' to address
the traffic violation that warranted
the stop,"

*Caballes*, 543 US at 407, 125 SCt 834, "and attend to
related safety concerns." Id.

Authority for the seizure thus ends when tasks tied to
the traffic infraction are — or reasonably should have
been — completed, whichever comes first. *Hernandez
v. Boles*, 949 F3d 251, 256 (6th Cir. 2020) (quoting
*Rodriguez*, 575 US at 354, 135 SCt 1609). "This is a
bright-Line rule." Id.

In addition, *Rodriguez* concerned a traffic stop
prolonged to accommodate a dog sniff. The Supreme
Court held,

"the critical question, then is not
whether the dog sniff occurs
before or after the officer issues
a ticket... but whether conducting
the sniff prolongs i.e. adds time
to the stop."

*Rodriguez*, 575 US at 357 135 SCt 1609.

(26)

A dog sniff safety measures taken to facilitate a different investigation, and is unrelated to questioning. For example, they are not tasks incident to the initial stop. <u>Rodriguez</u>, 575 US at 355-57.

> "A traffic stop cannot be extended to accommodate such unrelated task absent independent reasonable suspicion." Id.

In the instant matter, the Petitioner's vehicle was stopped for a drug investigation under the guise of a traffic stop. Nevertheless, the principles of reasonableness, scope and duration forecasted by <u>Terry</u> and its progeny still applies here.

The Indiana state trooper stated that he stopped the Petitioner for speeding, traveling 77 MPH in a 70 MPH zone. In pretext, the K-9 was deployed within moments of the stop before the computer checks was made. A positive alert was alleged for the presence of contraband, which established probable cause to search, an independent reasonable suspicion from the initial purpose of the stop. However, under the <u>Rodriguez</u> analysis, even if additional reasonable suspicion has occurred, the scope and duration must be limited and subservient to the purpose of the stop, <u>speeding</u>. Therefore, the Trooper must confirm or dispel these suspicions in a reasonable time.

Consequently, the scope and duration of the stop here, ran afoul of the limits set by <u>Terry</u>.

(27)

This search and seizure of the Petitioner and of his vehicle lasted nearly three (3) hours on Interstate 69.

Moreover, the unreasonableness of this search and seizure was so egregious that when the Petitioner asked "at what point do this search end?" And the Bloomington K-9 officer replied, "When he (Trooper) says so!"

As principled in <u>Caballes</u>, the stop here was lawful at its inception, where although the Petitioner believed under the facts of this case, that his vehicle was stopped based on the warrantless geolocational tracking of his cell phone, he submits to the Indiana state trooper observing a <u>speeding</u> violation. But, the manner and scope in which this search was carried on, by detaining the Petitioner for nearly three (3) hours④ on Interstate 69, was unreasonable and went beyond the "bright-line rule" set by <u>Terry</u>. However, its important to note that the Trooper failed to issue a warning ticket on traffic infraction for this violation. Therefore, based on the foregoing facts, the traffic stop went beyond the limits set by <u>Terry</u>, in violation of the Fourth Amendment.

④ Video evidence exist for this (3) hour search and seizure of the Petitioner and his vehicle, the Gov't and compromised attorney of record retains discovery of this instance

(28)

Fourth Amendment Claim #3:

II.  False Arrest and False Imprisonment

> Did Det. M^cCamey false arrest,
> kidnap, and false imprison the
> Petitioner in the absence of
> probable cause?

The Supreme Court opined that the Fourth Amendment
protects,

> "The right of the people to be secure
> in their persons.... against unreasonable
> ... seizures."

See Manuel v. City of Joliet, 137 SCt 911, 197 L Ed
2d 312 (2017).

Without probable cause, an arrest constitute an
unreasonable seizure in violation of the Fourth
Amendment, see United States v. Torres-Ramos, 536
F3d 542, 554 (6th Cir. 2008); also Messer v. Goodson,
965 F3d 507 (6th 2020).

> "A false arrest is one means of
> committing a false imprisonment, but
> ... a distinction has been drawn
> between the two in that a false arrest
> must be committed under assumption
> of legal authority ..."

See CJS False Imprisonment Sec. 2 (1960).

The Sixth Circuit Court has recognized that claims
for false arrest and malicious prosecution are both
constitutionally cognizable and both arise under the
Fourth Amendment. Howse v. Hodous, 953 F3d 402, 409
(6th Cir. 2020).

Starting with the Fourth Amendment, a warrantless

(29)

arrest is permissible under that constitutional provision when, at the time of arrest, the arresting officer has probable cause to believe the defendant committed a felony. See Armour v. State, 762 N E 2d 208, 215 (Ind Ct App 2002) trans denied.

Under Article I, Section 11, of the Indiana Constitution it observes,

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; shall not be violated; an no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Indiana Supreme Court has held that,

"Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that the person being arrested has committed or is in the process of committing an offense."

See Heffner v. State, 530 NE 2d 297, 300 (Ind 1988).

Indiana courts considers the legality of a search or seizure under this provision according to the totality of the circumstances. Richard v. State, 7 NE 3d 347, 350 (Ind Ct. App. 2014). We balance: (1) the degree of concern, suspicion or knowledge that a violation has occurred (2) the

(30)

degree of intrusion that the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs. Id.

In Det. McCamey's probable cause affidavit he stated that,

> "At approximately 11:02am, Kaman was observed driving his white Chrysler Pacifica in the area of southbound I-69... I was pacing him traveling 75 MPH in a 70 MPH zone. Both <u>speeding violations</u> occurred on I-69 southbound... ISP Trooper Caleb Garvin conducted a traffic stop... K-9 Ike was deployed ... conducted a free-air sniff... Officer Hasher advised that K-9 Ike had a positive indication of odor of narcotics omitting from the vehicle. After a vehicle search was conducted, <u>nothing of evidentiary value was located</u>. <u>Based on probable cause from the controlled buys, Kaman was arrested transported to the Bloomington Police Department</u>..." (emphasis mine)
> ( See Exhibit "A")

According to Det. McCamey, his initial seizure of the Petitioner was for a <u>speeding violation</u> — traveling 77 MPH in a 70 MPH zone. However, after a K-9 alert, and nearly <u>(3) three hour</u> search and seizure; and no evidence of criminal activity, was found, the Petitioner was <u>not free to leave</u> once the traffic stop ended.

( 31 )

Consequently, the Petitioner submitted to an assumption of lawful authority at this point once Det. McCamey established that he was arresting the Petitioner for two controlled buys of a controband drug. To confirm this assumption of lawful authority, Det. McCamey mirandized the Petitioner and handcuffed him. The Petitioner was then taken into custody and transported to the Bloomington Police Department and locked into a interview room for nearly (3) three more hours.

At this point this matter was no longer a seizure for a traffic stop. The Petitioner was arrested for two controlled buys of contraband.

Indiana courts has described a properly conducted controlled buy where sufficient controls were in place. See Mills v. State, (1978) Ind App 379 NE 2d 1023.

The Mills court described a properly conducted controlled buy,

> "A controlled buy consists of searching the person acting as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except what actually transpires in the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and then closely watch"

(32)

"all entrances to the residence thru-out the transaction."

Id. 379 NE 2d at 1026. Also see Heydon v. State, 936 NE 2d 300 (Ind Ct. App 2010),

"So long as the controls are adequate, the affiant's personal observation of a controlled buy may be sufficient as grounds for a finding of probable cause."

(quoting Methene v. State, 720 NE 2d 384, 390 (Ind. Ct. App. 1999)).

Here, the Government's discovery is devoid of the adequate controls realized in Mills. Thus the degree of knowledge and practical steps required to effectuate a controlled buy were not conducted by Det. McCamey. There exist no evidence that Det. McCamey, (1) met with a CI to confirm that he or she had no drugs; (2) that he provided the CI with pre-recorded funds; (3) that he fitted the CI with audio and video recording device; (4) visually surveilled the CI at all times; (5) met with CI after each transaction; (6) recieved the purchased drugs from the CI for each transaction; (7) search the CI a second-time to confirm the CI had no other drugs or money on his person after each transaction; (8) tested the contraband to determine the type of controlled substance after each transaction; (9) the date and time he transferred the same to the Bloomington police evidence custodian for safe keep and further lab analysis after each transaction.

Thus based on these facts, Det. McCamey did not

(33)

possess knowledge of a violation of this offense absent these steps. Currently, no charges exist for this arrest.

Next, assessing the degree of intrusion that the method of this search and seizure imposed upon the Petitioner's ordinary activities. First, he was seized for nearly three (3) hours on I-69. (2) once the traffic stop ended, he was not free to leave and continue his journey; (3) he was kidnapped and taken to the Bloomington Police Headquarters, and locked into a interview room for nearly three (3) more hours?

Lastly, in observing the extent of the needs of law enforcement at this point were not of an exigent or emergency nature. Although law enforcement has a governmental interest in dealing with the problem of illicit drugs, the level of intrusion here was clearly unreasonable. Here, Det. McCamey violated the Petitioner's reasonable expectation of privacy and well established Indiana law when he warrantlessly tracked the Petitioner's cell phone for nearly 10 days. (2) As this was a covert operation, maintaining its confidentiality at this point was in the best interest of law enforcement needs. Therefore, the Petitioner should have been allowed to leave at the conclusion of the traffic stop. The legality of this search and seizure under the totality of the circumstances clearly violates the provisions of the Indiana Constitution. At the time of arrest, Det. McCamey knew that he did not conduct the steps required for a controlled buy yet, he still

(34)

arrested the Petitioner in absence of probable cause. However, Det. McCamey maliciousness did not stop here, he also committed the criminal act of perjury as established in claims #4 and #5 of this petition.

To further condemn the malicious and criminal acts of Det. McCamey, the Petitioner found lawful detective work performed by Det. McCamey in Schaeffer v. State, 21A-CR-1579 (Ind. App Mar. 30, 2022). In that case, Det. McCamey did properly execute a controlled buy as specified in Mills.

Accordingly, whether probable cause exist depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. See Maryland v. Pringle, 540 US 366, 371 (2003); also see Devenpeck v. Alford, 543 US at 153 (2004).

Here, the facts and circumstances known to Det. McCamey at the conclusion of the traffic stop when nothing of evidentiary value was found, was to allow the Petitioner to leave and continue his journey, instead he falsely arrested the Petitioner.

The Fourth Amendment prohibits "unreasonable searches and seizures" and a Fourth Amendment claim based on an unreasonable seizure has two indispensible elements: (1) their must have been a "seizure" i.e. an arrest or some other use of

"physical force" or "show of authority" that in some way restrains the liberty of a person, See Torres v. Madrid, 592 US — 141 SCt 989, 995, 209 L Ed 2d 190 (2021), and the seizure must have been "unreasonable" which means in the case of a full blown arrest, that the officers making the arrest must have lacked probable cause. District of Columbia v. Wesby, 583 US — 538 Sct 577, 585-586, 199 L Ed 2d 453 (2018).

Consequently, the petitioner's current custody at the Oldham Detention Center, remains unlawful and in violation of his Fourth Amendment right.

Fourth Amendment Claim # 4

IV. Material False Statements in Probable Cause Affidavit

Did Det. McCamey commit the criminal act of perjury, when he submitted false material statements, in his probable cause affidavit, which misled state court judges, to issue search warrants in the absence of probable cause?

Under Indiana law pursuant to <u>Ind. Code § 35-44.1-2-1</u> provides that,

" A person who:
Makes a false, material statement
under oath or affirmation, knowing
the statement to be false or not
believing it to be true;
commits perjury, a level 6 felony. "

The record reflect that Det. McCamey did knowingly and intentionally with reckless disregard for the truth, and justice, deposed under oath, both written and orally, that he possessed probable cause to arrest the Petitioner for two alleged controlled buys of a contraband drug, which misled Indiana state court Judge Fawcett, to issue a search warrant for a storage unit leased to Victor Maxwell⑤, and also misled Indiana state court Judge Valerie, thru telephonic communication, to issue a search warrant

⑤ See Exhibit E

(37)

for the continued search of his vehicle.⑥
In Det. McCamey's probable cause affidavit he specifically stated,

> "After a vehicle search was conducted, nothing of evidentiary value was located. Based on the probable cause from the controlled buys, Kamau was arrested transported to the Bloomington Police Department . . ."
> (See Exhibit "A") (emphasis mine)

As the Petitioner established in Claim #3 of this petition, the __Mibbs__ Court theraten that a properly conducted controlled buy where all of the requisite controls are in place consist of (9) nine elements. Here the Government's discovery does not present any evidence, police reports or narratives that Det. McCamey (1) met with a CI to confirm that he/she had no drugs prior to the alleged transactions (2) presented the CI with pre-recorded funds prior to each alleged transaction; (3) presented evidence of fitting the CI with audio/video prior to each alleged transaction; (4) visually surveilled the CI at all times during each alleged transaction; (5) met with the CI at a pre-determined location after each alleged transaction; (6) received the purchased contraband and type of contraband purchased for each alleged transaction; (7) searched the CI a second-time to confirm that the CI possessed no other contraband or

⑥ See Exhibit G

(38)

Money on his/her person, after each alleged transaction;[8] tested the contraband substance purchased to determine if it was positive or negative for a controlled substance for each alleged transaction; and (9) submitted the date and time that he transferred the evidence of each transaction to the Bloomington police department's evidence custodian and/or lawful chain of custody per each alleged transaction. However, its based on these conclusory allegations and the materially false statements created from them, in addition to any omissions intentionally not incorporated, that the petitioner believes was critical to each state-court judge's analysis. See Mills v. State, supra.

The Seventh Circuit opined that a properly executed controlled buy is generally,

"a reliable indicator as to the presence of illegal drug activity."

United States v. Sidwell 440 F.3d 865, 869 (7th Cir. 2006); see also United States v. Bacon, 991 F.3d 835, 837 (7th Cir. 2021) establishing that,

"Controlled buys ordinarily go a long way towards establishing probable cause."

Moreover, the ability of a neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submits, (emphasis added)

"A search warrant is not valid if the police obtained it by

"deliberately or recklessly
presenting false, material
information, or by omitting
material information from
the affidavit provided the
issuing judge."

<u>United States v. McMurtrey</u>, 704 F3d 502, 508
(7th Cir. 2013) citing <u>Franks v. Delaware</u>, 438 US
154 (1978).

The Petitioner further contends that the accuracy
of the information submitted to the state-court
judges' determination of probable cause was
further compromised when Det. McCamey deliberately
omitted critical facts that he warrantless
tracked the Petitioner's cellular device for
nearly 10-days in violation of <u>Ind. Code § 35-
33-(2(a)(1) and (b)</u>. However, thru-out Det. McCamey's
probable cause affidavit, it infers that the petitioner
was physically surveilled to the storage unit,
but discovery evidence shows that his physical
movement was tracked for nearly 10-days, in
violation of his reasonable expectation of privacy,
during this same time.

Based on these deliberate false material
statements and omissions, both state-court judges
were intentionally misled by Det. McCamey.

Furthermore, because these alleged controlled buys
never occurred, the State of Indiana nor the
Government could bring charges for the same, ⑦

(40)

in the absence of probable cause. Moreover, because probable cause never existed for these alleged buys, the petitioner's current custody and detention remains unlawful, in the result.

Did the Government present these same false material statements and material omissions to the Grand Jury in the absence of probable cause?⑧

Section 18 USC § 1623 provides in pertinent part,

"Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under 1746 of Title 28, USC) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declarations or makes or uses any other information, including any books, paper, document, record, recording, or other material, knowing the same to contain any false material, shall be fined under this title or imprisoned not more than five years or both."

Here, the Government presented Det. McCamey's probable cause affidavit to the Grand Jury in addition to other evidence, and also omitted the same forgoing evidence of the warrantless tracking information from its presentation. Thus, the Government will be equally complicit in the violation of this statute, by knowingly presenting these material false statements and omissions.

① See Exhibit C
   See State v. Kamau, Case No. 53C03-2203-F2-000221
⑧ See Exhibit A

(41)

Thus, as the Petitioner has established in Claim(s) #5 of his petition, the Government's presentation of these false material statements to the Grand Jury and was derelict in its duty to inform, warrants the current indictment constitutionally invalid, as probable cause is still lacking in violation of both Petitioner's Fourth and Fifth Amendments. Thus the Petitioner's current custody and detention remains unlawful in the result of the malice committed herein.

(42)

Fourth Amendment Claim #7

Ⅴ. Malicious Prosecution

Did the Government seek a second
or successive prosecution without
probable cause against the Petitioner?

The Petitioner contends that the Government did
knowingly and intentionally seek to maliciously
prosecute the Petitioner by unlawfully arresting
him a second-time after the State of Indiana
dismissed said charges because lack of probable
cause.

The Supreme Court stated in Thompson v.
Clark, 142 S.Ct 1332 (2022) in pertinent part:

"The gravamen of the Fourth Amendment
claim for malicious prosecution, as
this Court has recognized it, is the
wrongful initiation of charges without
probable cause. And the wrongful
initiation of charges without probable
cause is likewise the gravamen of
the tort of malicious prosecution."

The Thompson Court further iterated:

"American courts described the elements
of malicious prosecution tort as follows
(i) the suit or proceedings was instituted
without any probable cause. (ii) the
motive in instituting the suit was
malicious which was often defined
in this context as without probable cause

(43)

"and for a purpose other than bringing the defendant to justice and (iii) the prosecution terminated in acquittal or discharge of accused"

Cooley 181. Id.

The Sixth Circuit established the principles necessary to manifest a malicious prosecution claim: (1) a criminal prosecution was "initiated against the Plaintiff and defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings the Plaintiff suffered a deprivation of liberty apart from the initial seizure and; (4) the criminal proceedings was resolved in the Plaintiff's favor." Sykes v. Anderson 625 F3d 294, 308 (6th Cir. 2010); Johnson v. Moseley 790 F3d 649 (6th Cir. 2015).

## Malicious Prosecution State Court

### Initiation of Prosecution

Under Indiana Law, Ind. Code § 35-33-7-2(a) provides that,

"At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte in a probable cause affidavit."

Here, Det. McCauley submitted his perjured probable cause affidavit to the state court judge ex parte. Consequently, the Petitioner was deprived of his right

(44)

to challenge probable cause here because of Mr. Kinnard's ineffective assistance of council. Thus, the perjured material statements made by Det. McCamey influence the decision to prosecute this matter in State Court. Clearly, Mr. Kinnard's failure to challenge the false material statements at this stage of the proceedings prejudiced the Petitioner under <u>Strickland</u>.

<u>Lack of Probable Cause</u>

After the traffic stop ended, and the (3) three hour search and seizure of the Petitioner and his vehicle did not uncover evidence of criminal activity, the Petitioner was not free to leave and continue his journey. It is here where Det. McCamey falsely arrested the Petitioner on (2) alleged distribution charges. However, after Det. McCamey's unlawful search of the storage unit, and contraband was found the Petitioner was charged with it. However, the Petitioner was not charged with the alleged sales charges. Therefore, probable cause to warrantlessly arrest the Petitioner was false, in violation of <u>Terry</u>, a Fourth Amendment violation.

<u>Deprivation of Liberty</u>

During the traffic stop, the Petitioner was unreasonably searched and seized for nearly (3) three hours on I-69. Thereafter, the Petitioner was falsely arrested, kidnapped and remained falsely imprisoned in a locked interview room for nearly (3) three more hours. Moreover, during the course of the State court proceedings the Petitioner's Liberty was restricted for (10) ten months on surety bond.

(45)

## Criminal Charges Dismissed

On or about November 11, 2022, said charges were dismissed by the State of Indiana. Consequently, based on the current facts and evidence of this matter, probable cause to further prosecute the Petitioner simply never existed from the case's inception. Nevertheless, the Government continued to maliciously pursue this matter in federal court, triggering the Bartkus exception.

## Malicious Prosecution Federal Court

## Initiation of Prosecution

Here, the Government submitted Det. McCamey's perjured probable cause affidavit to the Grand Jury with the same known false material statements, based on the same deficiency without probable cause. Also the Government was intentionally derelict in their duty to inform the Grand Jury of the perjury that was clearly material under Basurto. Based on these facts, the indictment is inconclusive under the KING exception. Consequently, Mr. Kinnard's failure to challenge these obvious constitutional violations only further prejudiced the Petitioner under Strickland.

## Lack of Probable Cause

Clearly, after the traffic stop ended, and the (3) three hour search and seizure of the Petitioner and his vehicle did not uncover evidence of criminal activity, the Petitioner was not free to leave and continue his journey. Consequently, Det. McCamey falsely arrested, kidnapped and false imprisoned the Petitioner.

## Deprivation of Liberty

On January 9, 2023, the Petitioner was falsely arrested a second-time, without probable cause and based on a constitutionally deficient federal arrest warrant. Consequently, the Petitioner's liberty has been further deprived and he remains unconstitutionally detained at the Oldham County Detention Center.

## Collateral Estoppel of Current Criminal Charges

### Sham prosecution

The Petitioner contends that the malicious prosecution by the state of Indiana was a sham or cover-up prosecution for the Government's current malicious prosecution of the Petitioner in federal court. The Supreme Court has identified a collusion exception to the dual sovereignty rule in Bartkus v. Illinois, 359 US 121, 122-24 79 SCt 676, 677-78 (1959), which prohibits a state prosecution from being used merely as a cover for the federal prosecution. Id.

The Bartkus Court held that successive prosecutions will be barred where one sovereign was acting as a tool of another. Id. at 123. So if one is merely "a sham or cover" for the other their interests merge and only one prosecution may be had. Id.

Here, the Petitioner can point to specific facts to show the Government's involvement beyond just info. sharing and/or joint state and federal agency investigatory cooperation. First, the state-court proceedings remained pending for nearly (11) eleven months with known facts that they lacked probable cause to prosecute.

( 47 )

Second, it's a known fact that the Government maintained physical custody of the contraband found in the storage-unit since the date of March 25, 2022, where the Government performed the lab analysis of the evidence found. ⑨

Thirdly, the Government delayed testing parts of the evidence from March 2022 to September 29, 2022 with-out just cause which in turn further delayed the State court proceedings.

Fourth, the DEA agents interrogated the Petitioner regarding the contraband found in the storage unit. Next, court-records show that state prosecutors stated in open court that the Government notified them that they would be picking up charges. Here, the State intentionally ceded its sovereign authority at the Government's request.

And Lastly, the essential fact that this matter, lacked probable cause from its inception in the state court and the Government's complicity in presenting known perjured material statements to the Grand Jury and its constitutional failure to inform, further demonstrates its quest to seek malice over justice.

<u>The Third Party Doctrine</u>

The Supreme Court has established that under the doctrine of collateral estoppel,

> "a non-party to an action can
> be bound by the determination
> of issues decided in that action
> if it controls or substantially
> participates in the control of the

---
⑨ See Exhibit "B"

(48)

"presentation on behalf of a party."

Restatement (Second) of Judgments Sec. 39. (1982) See Montana v. United States, 440 US 147, 154 99 S.Ct 970 974 59 L Ed 2d 210 (1979).

The Petitioner contends that the Government is equally bound by the Indiana state court's decision which dismissed the criminal charges against him. As earlier noted, the state clearly lacked probable cause to continue prosecution of this matter. Moreover, for nearly (11) eleven months the US Department of Justice retained and maintained full custody and control of the physical evidence found in the storage unit - the exact same - evidence used to prosecute this matter in state court.

Lastly, the state ceded its lawful authority to the Government at the Government's request. It is important to note, that both parties here, were well aware, that this matter lacked probable cause at it's inception. Thus, the Government did more than just sit on the sideline and lay dormant. Here, the Government had a sufficient laboring oar in the course of the state-court proceedings. Moreover, discovery evidence shows that the Government also intentionally delayed the lab test results for several months from March 2022 to October 2022. (See Exhibit B) while this matter was pending in state-court. Thus, given the Government's involvement in this matter, the Government by rule is collaterally estopped from relitigating this issue a second-time in federal court in that their sovereign interests over merged barred and currently with the State of Indiana under the Bartkus exception.

(49)

Because the Government's interests are merged under _Benton_, they have had over the course of (11) eleven months, a full and fair opportunity to litigate this matter.

Here, the Government's only intent at this point, is in the interest furthering its malicious prosecution of the Petitioner in its attempt to circumvent the provisions of the Double Jeopardy Clause.

Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment embodies the principles of collateral estoppel, which provides,

> "when an issue of ultimate fact
> has once been determined by a
> valid and final judgement, that
> issue cannot be again litigated
> between the same parties in
> any future lawsuits."

See _Ashe v. Swenson_, 397 US 436; 443 90 Sct 1189 25 L Ed 2d 469 (1976). The Double Jeopardy Clause provides that,

> "No person shall be subject for the
> same offence to be twice put in
> jeopardy of life or limb."

The Clause protects from being twice prosecuted "for the same offense." _Gamble v. United State,_ — US — 139 Sct 1760 1765 204 L Ed 2d 322 (2019). Because the Clause is focused on the statutory offenses for which a defendant is prosecuted, the "general test for compliance with the double jeopardy

Clause looks to "whether each statute requires proof of a fact which the other does not." _United States v. Gibbons_ 994 F2d 299, 301 (6th Cir. 1993) (quoting _Blockburger v. United States_ 284 US 299 304 52 Sct 180 76 L Ed 306 (1932)).

The Government as aforementioned is attempting to circumvent this vital constitutional protection with malicious prosecutorial tactics by charging the Petitioner with the same evidence and same type offense requiring the same elements to convict as was necessary during the state-court proceedings.

Under Indiana law, _Ind. Code § 35-48-4-1_ requires that,

    a person
      (1) knowingly or intentionally
      (2) possess with intent to deliver
        a controlled substance,
    commits the act of dealing

Conversely under Federal law _21 USC § 841_ provides that,

    a person
      (1) knowingly or intentionally and;
      (2) possess with intent to distribute
        a controlled substance;

Here both statutes require proof of the same facts to sustain a conviction under each respective statute. Consequently, jeopardy clearly attaches in this matter, that of which the Government attempts to maliciously avoid.

(51)

## The Fifth Amendment

No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except ... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; ...

## Questions Presented

1. Did the Government intentionally present known false material statements to the Grand Jury in the absence of probable cause?

2. Was there an intentional dereliction of duty to inform the Grand Jury?

3. Is the Grand Jury findings of probable cause conclusive with a known perjured probable cause affidavit?

4. Was the state prosecution a sham or cover for the Government to circumvent the Double Jeopardy Clause?

5. Has Double Jeopardy attached in the absense of probable cause of a second prosecution?

Fifth Amendment Claim #5

VI.   Constitutionally Invalid Bill of
      Indictment

        Did the Government intentionally
      present KNOWN false material
      statements to the Grand Jury?
      and Was there an INTENTIONAL
      dereliction of duty to inform?


The Fifth Amendment guarantees that,

      "No person shall be held to answer
      for a capital, or otherwise infamous
      crime, unless on presentment or
      indictment of Grand Jury."

This was designed,

      " to provide a fair method for
        instituting criminal proceedings"

Costello v. United States, 1956 350 US 359, 362

76 SCt 406, 408 100 L Ed 397, 402.

      " In this country as England of old the
        Grand Jury has convened as a body
        of laymen, free from technical rules,
        acting in secret, pledged to indict no
        one because of prejudice and free to
        no one because of special favor." Ibid

See also United States v. Calandra (1774) 414 US

338, 342-46 94 SCt 613 617-19 38 L Ed 2d 561, 568-

(53)

570. The Grand Jury performs its investigative function under the <u>direction</u> but not under the <u>control</u> of the prosecutor. See <u>Congressional Research Services.</u>

Petitioner avers that the Government has maliciously pursued a second or successive prosecution after the State of Indiana dismissed this matter for lack of probable cause.

Specifically, the Government has knowingly and intentionally presented false material statements before the Grand Jury to secure a true bill indictment of the Petitioner, a violation of 18 USC § 1623, and <u>The Due Process Clause.</u>

Section <u>18 USC § 1623</u> provides in pertinent part that,

"Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under <u>1746 of Title 28, USC</u>) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any

(54)

"False materials, shall be fined under this title or imprisoned not more than five years or both."

Under this provision, materiality is defined as a statement's

"effect or tendency to impede, influence or dissuade the grand jury from its investigation." (emphasis mine).

See United States v. Devitt, 499 F.2d 135, 139 (7th Cir. 1974) cert. denied, 421 US 975, 95 Sct 1974, 44 L Ed 2d 466 (1975)

The determination of materiality is an essential element of the crime and is a question of law for the court to decide. See United States v. Watson, 623 F.2d 1198 (7th Cir. 1980). Also, United States v. Basurto 477 F.2d 781, 785, 786 (1974) held that perjury by a witness would invalidate and indictment only when his testimony was material.

The Government has maliciously submitted Det. McCamey perjured probable cause affidavit with full knowledge of the material falsities that exist and the omissions intentionally made.

The Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment when the Government knows it is based partially on perjured testimony, when the

(55)

perjured testimony is material, and when jeopardy has not attached. (10)

Whenever the prosecutor learns of any perjury committed before the the Grand Jury, he is under a duty to immediately inform the Court and opposing counsel — and if the perjury is material, he must also inform the Grand Jury — in order that appropriate action may be taken. Basurto. Id

In Basurto, a Government's witness testified before a Grand Jury as to the defendant's activity in Marijuana smuggling. An indictment was returned based in substantial part, on this witness's perjured testimony.

The Court further illustrated the importance of the Government to <u>INFORM</u>,

"Today, the grand jury relies upon the prosecutor to initiate and prepare criminal cases and investigate which comes before it. The prosecutor is present while the grand jury hears testimony; he calls and question witnesses and draws the indictment. With that great power and authority, their is a <u>correlative duty</u>, and that is not to permit a person to stand trial when he <u>KNOWS</u> that <u>perjury</u> permeates the <u>INdictment</u>." Id (emphasis MINE)

(10) Jeopardy has attached IN this matter

(56)

The Banvurt Court further opined that,

"At the point at which he learned
of perjury before the grand jury,
the prosecuting attorney was under
a **duty** to notify the court and the
grand jury, to correct the cancer
of justice that had become apparent
to him. To permit the appellant
to stand trial when the prosecutor
**knew** of the perjury before the
grand jury only allowed the
cancer to grow. (emphasis mine)

Here, Det. McCamey stated in his probable cause
affidavit that,

"After a vehicle search was
conducted, nothing of evidentiary
value was located. Based on
probable cause from the controlled
buys, Kamau was arrest..."
(See Exhibit "A")

As the Petitioner has established in his False (#3)
Arrest Claim, The State of Indiana failed to
present physical evidence that two controlled buys was
conducted against the Petitioner. Det. McCamey
never submitted any police reports or police
narratives where he (1) met with a CI to confirm
that he/she had no drugs prior to the alleged
transactions (2) never presented pre-recorded funds
for each transaction (3) never presented evidence

(57)

of fitting the CI with audio/video of each transaction; (4) where he visually surveiled the CI at all times during each transaction; (5) met with the CI after each transaction; (6) received the purchased drugs and type of drugs purchased for each transaction; (7) evidence that he searched the CI a second time to confirm that the CI had no other drugs or money on his/her person after each alleged transaction; (8) that he tested the substance purchased to determine whether or not it was negative or positive for a controlled substance; and (9) the date and time that he transferred the evidence of each transaction to the Bloomington Police evidence custodian or an established lawful chain of custody for the physical evidence confiscated in the result. Consequently, because these buys never happened, the State of Indiana dismissed this matter for lack of probable cause. However, the Government has maliciously presented these same material falsities to the Grand Jury with full knowledge that Det. McCamey falsely arrested the Petitioner, in the absence of probable cause.

To further establish the malicious intent of the Government, they omitted exculpatory facts that Det. McCamey warrantlessly tracked the Petitioner's cell phone for nearly ten (10) days without first obtaining a court-order search warrant based on probable cause.

As a consequence of the Government's

dereliction of duty, and arrest warrant was established and the Petitioner was again falsely arrested a second time without probable cause.

Furthermore, Victor Maxwell, the lessee of said storage unit was not charged with the contraband found in the storage unit, the Petitioner was based on the material false statement made by Det. McCamey.

In Napue v. Illinois, supra the Supreme Court reaffirmed the principle stated in many of its prior decisions, that,

"a conviction obtained through use of false evidence, known to be such by representatives of the State must fall under the Fourteenth Amendment, citations. The same result obtained when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. Citations."

360 US at 269.

The Court reiterated,

"the principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, is implicit in any concept of ordered liberty..."If

See Giles v. Maryland supra, at 74.

In Mesarosh v. United States, 352 US 1, 77 Sct, 1 L Ed 2d (1956) The Court stated inter alia, that

"Mazzel the witness, by his testimony

(59)

"has poisoned the water in this
reservoir, and the reservoir
cannot be cleansed without first
draining it of all impurity . . .
Pollution having taken place here,
the condition should be remedied
at the earliest opportunity."

" The untained administration of justice
is certainly one of the most cherished
aspects of our institutions. Its
observance is one of our proudest
boasts... Fastidious regard for
honor of administration of justice
requires the Court to make certain
that doing of justice be made so
manifest that only irrational or
perverse claims of its disregard
can be asserted." Id

Community Party v. Subversive Activities Board
351 US 115, 124, SCt 663 668 100 L Ed 1003

" Permitting a defendant to stand
trial on an indictment which
the Government KNOWS is
based on perjured testimony
cannot comport with this Fastidious
regard for the honor of the
administration of justice." Id.
(emphasis added)

Here, the Government was complicit in its
presentation of these false material statements
to influence the Criminal Jury and was
intentionally derelict in its duty to inform, thus

(60)

compromising *Justice* for its own *Malice*.
(emphasis mine)

## Is the Grand Jury findings of probable cause in this matter conclusive?

Although an indictment is generally "fair upon its face by a properly constituted grand jury" and "conclusively determines the existence of probable cause," *Barnes v. Wright*, 448 F2d 709, 715-16 (6th Cir. 2006), however, this "conclusivity" can be challenged when the law enforcement officer made false material statements and omissions.

The Sixth Circuit has created an exception to the rule of conclusiveness for actions taken by law enforcement officials outside of grand jury testimony that serves to make the grand jury's indictment a rebuttable and not a conclusive presumption of probable cause. See *King v. Harwood*, 852 F3d 568, 587-88 (6th Cir. 2017) (emphasis mine).

In *King*, the Sixth Circuit stated that a defendant may overcome the presumption of probable cause created by a grand jury indictment where,

   "A law enforcement officer, in the course of setting prosecution in Motions, (1) either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or fabricates evidence."

"The false statements and evidence, (2) together with any concommitant misleading omissions, are material to the ultimate prosecution of the defendant, and (3) The false statements, evidence, and omissions do not consist solely if grand jury testimony or preparation for that testimony (where preparation has a meaning broad enough to conspiring to commit perjury before the grand jury), the presumption that the grand jury indicted is evidence of probable cause is rebuttable and not conclusive." (emphasis mine)

KING 852 F3d at 587-88.

The presumption that the grand jury indicted is evidence of probable cause is rebuttable and not conclusive in this matter for several reasons. First, the evidence shows that Det. McCamey did knowingly and recklessly make false statements in his probable cause affidavit when he lied about conducting two controlled buys against the Petitioner where no physical evidence or otherwise of these transactions exist. Nevertheless, the Petitioner was falsely arrested for the same. Second, neither the State of Indiana nor the Government were able to bring charges because of the non-existence of evidence for these transactions.

Next, charging the Petitioner with contraband found in a storage unit leased to Victor Maxwell, several hours after the Petitioner was falsely arrested,

(62)

Kidnapped and falsely imprisoned and not charge the Lessee of said unit with the same is also deficient.

Fourth, evidence of fact, filed away intentional omission of the fact that he knowingly and intentionally violate Indiana Law with his warrantless geolocational tracking of the Petitioner's cell phone for nearly (10) ten days without probable cause.

And lastly, the Government's intentional dereliction of duty to inform the Grand Jury of these known facts, omissions and material false statements, Clearly, the Grand Jury's determination of probable cause is unreliable because of the Government's intent to mislead them in its pursuit of malice vs. justice in this matter.

Thus, the Petitioner custody and detention remains unlawful at the Oldham County Detention Center.

Fifth Amendment Claim #6

VII.    Double Jeopardy

Was the state prosecution a sham
or a cover for the Government
to circumvent the Double
Jeopardy Clause?

The Double Jeopardy Clause of the Fifth
Amendment provides that,

"Nor shall any person be subject
for the same offence to be twice
put in jeopardy of life or limb."

U.S. Const. Amend I.

The Supreme Court has fashioned a dual
sovereignty rule, under which a defendant's
act may be a crime under both state and
federal laws, and a defendant can be
punished by each sovereign for the same act
without violating the Double Jeopardy Clause.
See Abbate v. United States, 359 US 187,
195-96 79 SCt 666, 671 (1959). However, a
collusion exception to the dual sovereignty rule
prohibits the state prosecution from being
used merely as a cover for the federal
prosecution. See Bartkus v. Illinois, 359 US

(64)

121, 122-24 79 SCt 676, 677-78 (1959). (emphasis added)

"Cooperation and joint investigations between State and Federal authorities are permissible," so long as one prosecution is not a sham or a cover for the other. See United States v. Patterson, 809 F2d 244, 247 (6th Cir. 1987); United States v. Aboumoussallem, 726 F2d 906, 910 (2d. Cir. 1984).

"This exception - known as the sham prosecution exception - has been construed extremely narrowly by lower courts. It requires more than mere showing cooperation between two sovereigns."

United States v. Djoumessi 838 F3d 547, 550 (6th Cir. 2008)

"Rather it must be shown that one sovereign ceded its authority to prosecute and acted only because the other sovereign told it to do so." Id.

See Also United States v. Clark, 254 Fed Appx. 528 533 (6th Cir. 2007) refusing to recognize an exception to the Dual Sovereignty Doctrine because: "nothing in the record suggested that state authorities did not make their own determinations

(65)

"regarding prosecution..." Id.

The dual-sovereignty principle applies where, "two entities derive their power to punish from wholly independent sources."

Puerto Rico v. Sánchez Valle 579 US 59, 68 136 Sct 1863, 195 LEd2d 179 (2016)

The doctrine has come up most frequently in the context of the States. See e.g. Heath v. Alabama 474 US 82, 88-90 106 Sct 433 88 L Ed 2d 387 (1985). (States are separate sovereigns from one another); Lanza, 260 US at 382 43 Sct 141 (States are separate sovereigns from the United States)

The Bartkus Court suggests that, "the dual-sovereignty doctrine will not apply if a second prosecution by an apparently separate sovereign is 'in essential fact' just a cover for a second prosecution by the first sovereign."

Bartkus supra:

The Petitioner contends that the Government did knowingly circumvent the

(66)

with state investigators, however, control of the evidence goes beyond that scope. It serves as a laboring oar and further demonstrates privity on behalf of the Government, during the course of the state-court proceedings.

Moreover, the Government further knew that Det. McCamey never possess the requisite probable cause to (1) warrantlessly track petitioner's cellular device, (2) warrantlessly arrest the petitioner without probable cause and (3) he maliciously made false material statements to both state-court judges to fraudulently obtain search warrants for the storage unit. Given these facts, the Government did more than just sit on the side and lay dormant.

The Supreme Court has established that under the doctrine of collateral estoppel,

"a non-party to an action can be bound by the determination of issues decided in that action if it "controls or substantially participates in the control of the presentation on behalf of a party."

Restatement (Second) of Judgements Sec. 39. (1982) see Montana v. United States, 440 US 147, 154 99 St 970 974 59 L Ed 2d 210 (1979).

The Sixth Circuit in Scherer v. Wiles, case no. 15-3809, case no. 15-3832 (6th Cir. 2016) touched on the third-party doctrine where it stated,

"Given Scherer's involvement, the district court correctly looked to Montana v. United States 440 US 147 (1979) which provides: to preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending"

(68)

"Multiple lawsuits, conserves
judicial resources, and fosters
reliance on judicial action by
minimizing the possibility of
inconsistent decisions. These interests
are similarly implicated when
non-parties assumes control over
litigation in which they have a
direct financial or propriety
interest and thus seek to re-deter-
mine issues previously resolved . . .
The persons for whose benefit and
at whose direction a cause of action is
litigated cannot be said to be "strangers
to the cause. . . . One who prosecutes or
defends a suit in the name of another to
establish and protect his own right, or
who assist in the prosecution or defense
of an action in aid of some interest of
his own . . . is as much bound . . . as he
would be if he had been a party to the
record."

Id. at 153-154. (alterations in the original)

The Sixth Circuit stated pursuant to Montana
and Ohio cases like it, Scherer was collaterally
estopped from relitigating the underlying issues.
As the district court observed,

"Under no circumstances could it
be said that someone who was not a
party to a claim had a more fair
and full opportunity actively to

"participate in the litigation of a claim
in which he shared a common interest."
Although not a party, " Scherer
Nonetheless had a sufficient laboring
oar in the conduct of his state-court
litigation to activate principles of
estoppel. "(emphasis mine)

Montana, 440 US at 155 ; see Brown v. Dayton, 730
NE 2d 958, 962 (Ohio 2000) ("A mutuality of
interest, including an identity of desired result
creates privity.") "Accordingly, the district court's
application of collateral estoppel was not erroneous."

The Bartkus Court held that successive
prosecutions will be barred where one sovereign
was acting as a tool of another. Id. at 123. So if
one is merely "a sham or cover" for the other,
their interests merge and only one prosecution may
be had. Id (emphasis mine)

Here, malicious prosecution of the Petitioner is
clearly what given the multiple constitutional
violations at bar.

First, the warrantless tracking of the Petitioner's
cellular device, was an infringement of the
Petitioner's reasonable expectation of privacy and
a blatant violation of Indiana Law under Ind.
Code § 35-33-12(a)(1) and (6). In addition to the

(70)

principles realize in Carpenter establishing that historical data of (7) seven days or even less constitutes a search under the Fourth Amendment.

Second, the unreasonable search and seizure of the Petitioner and his vehicle in which he was searched and seized for nearly (3) three hours on I-69 during a routine traffic stop that extent beyond the time-limits sued by Terry and its progeny.

Thirdly, the warrantless arrest of the Petitioner in the absence of probable cause on the basis of false allegations of controlled buys that never occurred. Moreover, the Government's knowledge that Det. McCamey committed the criminal act of perjury under Ind. Code § 35-44.1-2-01 when he deposed both written and orally to (2) two state court judges to obtain search warrants in the absence of probable cause.

Fourth, the Government's complicit action when it knowingly and intentionally submitted the same perjured probable cause affidavit, with known false material facts and omissions, to the Grand Jury to obtain a true bill indictment; and its failure to inform as principled in Basurto.

Consequently, the activation of the principles of estoppel are readily apparent, based on the physical control of the most important part of the state's case, the contraband found in the storage unit, and the intentional delay of the lab results, would

(71)

is clearly be exercise of control absent a distinct sovereign party. Here, the delay in lab results had a profound impact on the course of the state court proceedings. Moreover, had the Petitioner had a competent professional attorney to identify the collusion efforts cited herein, surely the Government would not currently have a "second bite of the apple" as the Scherer court identified.

Thus, to have crystal clear knowledge that probable cause to prosecute was absent and the current custody of the Petitioner is being unlawful, and yet and still have the audacity to institute a second and successive prosecution, after a full and fair opportunity existed to litigate this matter in state-court, is the "essential facts" realized in Bartkus and the "Laboring oar" of control identified in Montana, thus realizing collusion as well as hounding the Government as a sufficient third party to the state-court proceeding and piercing its independent sovereign position to litigate this matter a second-time in Federal court. Thus, Here, principles of collateral estoppel is triggered.

Consequently, the Government has been complicit in totality of the prosecution in both forums, therefore, its safe to conclude, that the Government has used the state-prosecution as a cover to circumvent the Petitioner's constitutional protections under the Double Jeopardy Clause, in the absence of probable cause.

(72)

provisions of the Double Jeopardy Clause by utilizing the State of Indiana prosecution of the Petitioner when it intervened to bring charges against him at the inception of the State-court proceedings.

After (10) ten months into the state-court proceedings, the state-prosecutor intentionally ceded its sovereign authority to the Government at the Government's request as state-court records indicate.

Petitioner's former attorney of record stated to the petitioner that this matter was "going Fed all along". Also, Government agents interrogated the Petitioner as to the contraband found in the storage unit.

Moreover, and most critical to the Government's involvement in the state-court proceedings, is the fact that physical custody of the evidence found in the storage unit was ~~leaked~~ *released* to the Government on or about March 31, of 2022. Hence, the Government's control of the evidence directly affected the state-court proceedings where the records indicate that the lab results were arbitrarily delayed nearly six-months with out just cause albeit at the Government's custodial care. Critical to this analysis is the fact that the state of Indiana possess's its own state-run crime lab. Thus, the above have demonstrates the Government control and influence of the state-court proceeding by having physical control of the most important element of the state's prosecution— the evidence found in the storage unit.

Although the Government can do "joint investigation"

⑪ See Exhibit "B"

Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in (prior action) (2) was passed upon and determined by a court of competent jurisdiction and (3) when the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action. <u>Daubenmire v. City of Columbus</u>, 507 F3d 383, 389 (6th Cir. 2007)

Accordingly, the Petitioner has asserted the principles of collateral estoppel in this matter based on the fact that the Government was in privity to the State of Indiana during the previous state-court proceedings. The Petitioner has shown essential facts of collusion between the Government and the State of Indiana, thus surrendering its sovereignty and merging its authority to prosecute with the State of Indiana's previous malicious prosecution of the Petitioner.

### Has Double Jeopardy attached in this matter?

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall

"be subject for the same offence
to be twice put in jeopardy of life
or limb."

Because the Clause is focused on the statutory offense for which a defendant is prosecuted, the general test for compliance with the double jeopardy clause looks for whether each statute

(73)

requires proof of a fact which the other does not. *United States v. Gibbons*, 994 F2d 301 (6th Cir. 1993) (quoting *Blockburger v. United States*, 284 US 299, 304 52 S.Ct 180 76 L.Ed 356 (1932)).

In applying the *Blockburger* test to the facts at bar, under Indiana law pursuant to Ind Code § 35-48-4-1 provides in pertinent part,

"that a person (1) knowingly or intentionally (2) possess with intent to deliver a controlled substance, commits the act of dealing;"

Conversely, under federal law pursuant to 21 USC § 841(a)(2) provides in pertinent part that,

"it shall be unlawful for any person knowingly or intentionally (2) create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

Under *Blockburger*, offenses defined by a single sovereign are distinct offenses only if each "requires proof of a different element." Id. Here, both statutes require proof of the same (2) two elements to sustain a conviction, (1) knowingly and (2) posse with intent to deliver (Indiana) or distribute (Government).

Therefore, jeopardy attaches in this matter.

The Constitution against double jeopardy embodies the principle of collateral estoppel, which provides,

"that when an issue of ultimate fact has once been determined by a valid and final judgement,

(74)

" that issue cannot again be
Litigated between the same
parties in any future Lawsuits. "

See _Ashe v. Swenson_, 397 US 436, 443 90 SCt 1187 25
L Ed 2nd 469 (1970).

Consequently, the malicious prosecution here, is
collaterally estopped and to further prosecute this
matter violates the Double Jeopardy Clause.

## The Sixth Amendment

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury . . . and to have Assistance of Counsel for his defence.

## Questions Presented

1. Did Terrance Kinnard intentionally render ineffective assistance of counsel in defense of the Petitioner?

2. Did Terrance Kinnard violate the Petitioner's right to due process of Law?

3. Did Terrance Kinnard prejudice the Petitioner's Fourth Amendment rights?

4. Did Terrance Kinnard's deficient performance subject the Petitioner to (2) two malicious prosecutions?

5. Did Terrance Kinnard's deficient performance subjected the Petitioner's being twice placed in jeopardy?

(76)

Sixth Amendment Claim # 8

VII.    Intentional Ineffective Assistance of Counsel

> Did Terrance Kinnard
> intentionally render ineffective
> assistance of counsel in defense
> of the Petitioner?

The Sixth Amendment to the United States
Constitution provides in pertinent part, that,

> "In all criminal prosecutions,
> the accused shall... have the
> Assistance of Counsel for his
> defense."

The Petitioner avers that Terrance Kinnard, his
former attorney of record, did knowingly and
intentionally conspire and confederated with
malicious intent with the Government to bring
criminal charges in the absence of probable
cause in the United States District Court,
Indianapolis Division, in blatant violation of his
Sixth Amendment right to effective assistance of
counsel.

In analyzing a ineffective assistance of
counsel claim, the United States Supreme
Court stated,

> "The starting point for analyzing
> a claim of ineffective assistance
> of counsel is the two pronged test
> set forth in Strickland v. Washington,
> 466 US 668, 687 (1984)"

(77)

Under the Strickland standard, a criminal defendant must demonstrate both that his,

"counsel's representation fell below an objective standard of reasonableness" and

"that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different."

Strickland, 466 at 687-88, 694; See also Thomas v. Betz, 818 F.2d 476, 480 (6th Cir. 1987).

## Deficient Performance

Deficient performance requires that counsel's representation "fall below an objective standard of reasonableness," and that "there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 688-89.

Evidence shows that Mr. Kinnard fully investigated this matter while it was being litigated during the state-court proceedings.

First, Mr. Kinnard researched the geolocational tracking information which showed facts that the petitioner's cell phone was warrantlessly tracked for nearly 10 days, a direct violation of his reasonable expectation of privacy and blatant violation of the probable cause and warrant mandate

(78)

pursuant to Ind. Code § 35-33-12(a)(i) and (b).

Second, Mr. Kinnard observed evidence of the nearly three (3) hour search and seizure of the Petitioner and his vehicle during the traffic stop which went beyond the limits set by Terry and its progeny.

Third, Mr. Kinnard observed evidence of Det. McCamey's warrantless arrest, kidnapping and false imprisonment of the Petitioner in the absence of probable cause. Finally, Mr. Kinnard observed evidence that Det. McCamey committed the criminal act of perjury in his probable cause affidavit which contained material false statements that was critical to the magistrate's issuance of search warrants for storage unit and further search of the Petitioner's vehicle.

Consequently, Mr. Kinnard failed to address these issues at the ex parte probable cause hearing, where Det. McCamey's perjured probable cause affidavit was presented to the magistrate judge. Furthermore, he filed (4) four continuances over an (11) eleven month time-span while this matter was pending in the state-court.

The final and most critical fact to this analysis, in his failure to address the state and federal collusion where evidence shows that the State of Indiana ceded authority of this matter to the Government several days after this incident occurred, in which the state relinquished custody of the evidence found in the storage unit to the Government on March 31, 2022 approximately (6)

(77)

six days after the false arrest occurred (03/25/22). Consequently, the Petitioner was the subject of a Sham prosecution for nearly (11) eleven months during the entirety of the state-court proceedings.

Moreover, Mr. Kinnard's mishaps did not stop here, he allowed this matter to be relitigated again, thus subjecting the Petitioner to a second malicious prosecution by the Government.

Within the illegal process of establishing a second malicious prosecution in federal court, Mr. Kinnard allowed the Government to present known false material statements to the grand jury with knowledge that the Government failed to inform them of the same, under Basurto.

Finally, Mr. Kinnard failed to challenge the Government's second malicious prosecution, challenge collusion under the Bartkus exception, challenge the Government's role as a third party and the doctrine of collateral estoppel under Montana and Double Jeopardy under Blockburger.

However, Mr. Kinnard's deficient performance worsened, whereas his only legal advice was to concede to a proffer-plea agreement with the Government. Consequently, given these facts,

"counsel failed to function in
a meaningful sense as the
Government's adversary."

See United States v. Cronic 466 US 648, 666 (1984). Here, Mr. Kinnard intentionally compromised the

Petitioner, an actually became an advocate for the Government and a adversary to him. Clearly, Mr. Kinnard's representation has fell below an objective standard of reasonableness and as a consequence of his deficiencies, the presumption of reasonable professional assistance fails under <u>Strickland</u>.

<u>Prejudice prong</u>

Petitioner contends that but for Mr. Kinnard's unprofessional and intentional errors, he would not be the subject of a second malicious prosecution; neither will he be currently unconstitutionally detained at Oldham County Detention Center.

Mr. Kinnard prejudiced his defense when he failed to have charges dismissed in state-court for lack of probable cause. Here, he knew that Det. McCamey falsely arrested, kidnapped and false imprisoned the Petitioner once the traffic stop ended, yet, he intentionally turned a blind-eye to this egregious constitutional violation.

Second, Mr. Kinnard's inaction further prejudiced his defense when he failed to challenge Det. McCamey's warrantless tracking of the Petitioner's cell phone for nearly (10) ten days, a blatant violation of the court-ordered probable cause warrant mandate per Indiana law and the blatant invasion of the Petitioner's reasonable expectation of privacy under the fourth.

(81)

Amendment and the principles realized in
Cuthbertson.

Third, Mr. Kinnard further prejudiced his
defense when he intentionally failed to challenge
the (3) three hour search and seizure of his person
and his vehicle and the false arrest after the
traffic stop ended, a crystal clear violation of the
limits set by Terry.

Fourth, Mr. Kinnard further prejudiced his
defense when he failed to have this matter
dismissed on grounds that Det McCauIey committed
the criminal act of perjury, in his probable cause
affidavit, which contained materially false
statements and omissions which misled both state
court judges to issue search warrants for said
storage unit and the continue search of his
vehicle with full knowledge that probable cause
was absent, a Fourth Amendment violation.

Fifth, Mr. Kinnard further prejudiced the
Petitioner's defense when he intentional failed
to challenge the constitutionality of the
Government's Bill of Indictment when they (Gov'T)
presented known false material statements to
the Grand Jury and he knew that they^were additionally
denied in^their constitutional duty to inform as
realized in Basurto.

Sixth, Mr. Kinnard further prejudiced his
defense when he allow the Petitioner to be
twice put in jeopardy for a second malicious

(82)

prosecution, when he allowed the Petitioner to be (1) subject to a "sham" prosecution (2) he knew the Government retain custody of the evidence seized from the storage unit [?] six days after the Petitioner was falsed/arrested, (3) that the Government intentionally delayed lab results for several months (4) that the Government indicted the Petitioner while the matter was still pending in state court because it maintained physical custody of the evidence's (5) that the Government served as a sufficient laboring our during the entirety of the state court proceedings and was a unofficial third party thereto; and (6) subjected the matter to be relitigated with full knowledge that the Government surrendered its sovereignty because of the "sham" prosecution, under ___ and Montana.

   Consequently, the intentional deficiencies have prejudiced his defense both collectively and respectively all in the absence of probable cause. The foregoing demonstrates that Mr. Kinnard clearly "abandoned his duty of loyalty" and has arbitrarily deprived the Petitioner of his constitutional "right to counsel". See Rickman v. Bell, 131 F.3d 1150 (6th Cir. 1997) Moreover, Mr. Kinnard made "errors so serious that (he) counsel was not functioning as a counsel guaranteed the Petitioner by the Sixth Amendment." See Leonard v. Warden, Ohio State Penitentiary, 846 F3 \ 852, 853-844 (6th Cir. 2017) (quoting Strickland, 466 U.S.

(83)

at (1847). As a consequence of Mr. Kinnard's blatant and egregious errors, the outcome of this matter would be different, as the Petitioner would not be currently unlawfully detained in custody in the absence of probable cause. Accordingly, the Petitioner has shown prejudice under Strickland.

## Summary Conclusion

### Invasion of Privacy

The Petitioner has established that Det. McCamey did knowingly and intentionally infringe upon his reasonable expectation of privacy when his cellular tablet's geolocation was unlawfully tracked for nearly (10) ten days without probable and his blatant violation of Indiana's court-ordered search warrant mandate, pursuant to Ind. Code § 35-33-5a(2(a)(b) and (b). Moreover, the Carpenter court has recognized that obtaining historical cell phone data of (7) seven days or fewer constitutes a search and violates the Fourth Amendment.

### Unreasonable Search and Seizure During Traffic Stop

Second, the Petitioner has shown that the Indiana State Police violated the Fourth Amendment during a lawful traffic stop, due to the prolonged search and seizure of the Petitioner and his vehicle for (3) three hours on U.S. interstate 69, beyond the time limits set by Terry and its progeny. To date the Petitioner's current custody and detention remains unlawful in the result, and violates the Fourth Amendment. Moreover, the Petitioner has not been issued a warning ticket or speeding citation.

### False Arrest, Kidnapping and False Imprisonment.

Third, the Petitioner has shown that after the (3) three hour search and seizure of his person and vehicle, and nothing of evidentiary value was found, he was not free to leave and continue his journey. Det. McCamey did knowingly and

(85)

intentionally with reckless disregard falsely arrest, kidnap and false imprisoned the Petitioner where he was handcuffed and moved to the Bloomington Police Department, and locked into an interview room for nearly (3) three more hours, in the absence of probable cause, a clear-cut violation of the Fourth Amendment. Manuel v. City of Joliet, supra. The Petitioner's current custody and detention remains unlawful in the result.

Criminal act of Perjury

Fourth, the Petitioner has shown that Det. McCamey had knowingly and intentionally commit the criminal act of perjury under both state and federal laws pursuant to Ind. Code § 35-44.1-2-1 and 18 USC § 1623 where Det. McCamey blatantly made materially false statements in his probable cause affidavit that he conducted "controlled buys" of contraband against the Petitioner to intentionally mislead both state-court judges to issue search warrants for the continued search of his vehicle and the search of a storage unit not leased to the Petitioner, a violation of the Fourth Amendment. See Franks v. Delaware, supra.

Malicious Prosecution #1

Fifth, the Petitioner has shown that the State of Indiana maliciously instituted prosecution against the Petitioner in the absence of probable, for contraband found in said storage unit, where charges were dismissed (6) ten months later, a violation of the Fourth Amendment. Thompson v. Clark, supra.

(86)

<u>Malicious Prosecution #2 and Failure to Inform</u>

Sixth, the Petitioner has shown that his current custody and detention is the result of a second or successive malicious prosecution with crystal clear knowledge that probable cause was lacking when the Government did knowingly and intentionally aided and abetted the criminal act of perjury pursuant to <u>18 USC § 1623</u> by presenting Det. McChumey's perjured probable cause affidavit — with known false material facts and omissions — to the federal grand jury and "its failure to inform the same," in violation of both the <u>Fourth</u> and <u>Fifth Amendments</u>, in addition to the principles enunciated in <u>Bainds</u>. Thus, the Petitioner's current custody and detention remains unlawful in the result.

<u>Collusion, Surrender of Sovereignty and Estoppel</u>

Seventh, the Petitioner has shown that the malicious prosecution in the state-court was indeed a sham prosecution or cover prosecution for the Government to circumvent the provisions of estoppel under the "Double Jeopardy Clause — to bring a second malicious prosecution in federal court. The Petitioner has shown essential facts which demonstrates that the Government's role during the state-court proceedings were more than just routine state and federal investigative assistance and cooperation. The Government had a different bearing ear during the whole of these

proceedings where it maintained full custody and control of the physical evidence used to prosecute in state-court, demonstrating a third-party interest, and merger of its independent sovereign authority with that of the State of Indiana. See Bartkus and Heatham. Thus, precluding the Government from re-litigating this issue which it had a full and fair opportunity to litigate in state-court by the same parties in federal court based on the same facts and lack of probable cause. Estoppel attaches pursuant to the Double Jeopardy Clause under the Fifth Amendment.

Intentional Ineffective Assistance of Counsel

Finally, the Petitioner has shown that Mr. Kinnard did knowingly and intentionally render ineffective assistance of counsel for his defense where he failed to challenge Det. McCamey's violation of his reasonable expectation of privacy in addition to the blatant violation of Ind Code § 35-33-5-12(a)(1)

Next, Mr. Kinnard's failure to challenge the prolonged (3) three hour search and seizure of the Petitioner's person and vehicle beyond the limits set by Terry, where the Petitioner was not free to leave after the search ended.

Third, Mr. Kinnard's failure to challenge the State's malicious prosecution of the petitioner, with full knowledge that Det. McCamey falsely arrested, kidnapped and false imprisoned him in the absence of probable cause.

(88)

Fourth, Mr. Kinnard's failure to challenge the state and federal collusion, with full knowledge that the state prosecution was a "sham" and cover for the current federal prosecution all in the absence of probable cause.

Fifth, Mr. Kinnard's failure to challenge both search warrants with full knowledge that Det. McCamey commit the criminal act of perjury when he submitted false material statements to both state-court judges to mislead them to issue the warrants.

Sixth, Mr. Kinnard's inaction which allow a second malicious prosecution in the absence of probable cause by the Government. In addition to his failure to challenge the known false material statements used by the Government to secure an indictment in the absence of probable and the Government's failure to inform the Grand Jury of these known falsities. Consequently, Mr. Kinnard's colossal failures here, weve clearly not a matter of trial strategy as realized under <u>Strickland</u>. Thus, all of the failures and inactions described thru-out this petition clearly prejudiced the outcome of the proceedings under <u>Strickland</u>, as the Petitioner essentially had no counsel at all.

<u>Conclusion</u>

   Det. McCamey violated the Petitioner's reasonable expectation of privacy and Indiana law. After the

(89)

prolonged search and seizure during the traffic stop ensued, the Petitioner was not free to continue his journey, and of course, falsely arrested, kidnapped and false imprisoned the Petitioner. The State of Indiana maliciously prosecuted him, dismissed the charges and the Petitioner was subject to second or successive malicious prosecution on the basis of state and federal collusion') where the 'Government had a sufficient laboring oar during the entirety of the state court proceeding and demonstrated third-party control of evidence seized; thereby subsequently surrendering its sovereign authority in the result') as principles of estoppel now applies. The Government did present known false material statements to the federal grand jury and failed to informed them of the perjury) and 'Mr. Kinnaird's assistance of counsel's performance fell well below that of prevailing professional norms; and the result of his deficiencies prejudiced the outcome of the proceedings in this matter.

Where there is a false arrest, that's an arrest without probable cause, and where there is a malicious prosecution, that's a prosecution initiated without probable cause as iterated by the <u>Thompson</u> court. The Petitioner was falsely arrested, kidnapped, and false imprisoned by Sgt. McConney, he was maliciously prosecuted by the State of Indiana and now being maliciously prosecuted a second-time by the Government and is currently falsely imprisoned at the Oldham County Detention Center, albeit, without probable cause.

(90)

<u>Affidavit</u>

I, Khaltani Kamau, under penalty of perjury pursuant to <u>28 USC § 1746</u>, the foregoing facts and statements made in this Petition for Writ of Habeas Corpus and Memorandum of law in support thereof, is true and correct to the best of my knowledge and recollection.

Done on this 21st day of April 2023.

_____
Affiant

Witnesse(s): I, Deputy J. Johnson Witnessed him Sign this letter on 04/21/2023.

State of KY, County of Oldham
Signed before me on this 21st day of April, 2023 by Khaltani Kamau
Notary Public Amanda Hamilt

AMANDA HAMILTON
NOTARY
ID KYNP47000
MY COMMISSION
EXPIRES
3/14/2026
PUBLIC
STATE AT LARGE, KY.

(91)